IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2007

## STATE OF TENNESSEE v. JOE CARPENTER TYREE

**Appeal from the Circuit Court for Marshall County**
**No. 16907     Robert Crigler, Judge**

---

**No. M2006-02173-CCA-R3-CD - Filed August 10, 2007**

---

The Defendant, Joe Carpenter Tyree, was convicted of aggravated robbery following a jury trial in Marshall County. The Defendant was sentenced as a Range I, standard offender to twelve years in the Department of Correction. On appeal, the Defendant asserts that the evidence is insufficient to support his conviction beyond a reasonable doubt, that the sentence imposed was excessive, and that the trial court erred by not instructing the jury on the lesser-included offense of attempted aggravated robbery. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Andrew Jackson Dearing, III, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, Joe Carpenter Tyree.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Charles Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

This case arises from the theft of approximately $300.00 from a store clerk at gunpoint in Lewisburg on August 20, 2005. The victim, Amy Marchese, testified that she was employed at the Dollar General store in Lewisburg. Ms. Marchese stated that she was "training to be an assistant manager on night shift" and "mainly did cash registers, stock and putting away items in the store." Ms. Marchese testified that, at about 7:30 in the evening, a white male customer entered the store. Ms. Marchese testified that she had seen this man, whom she identified as the Defendant, "[m]aybe

one time" before because she had "worked in three of the main convenience stores" and had seen "a lot of people."

Ms. Marchese stated that the Defendant browsed in the store for a few minutes and then "walked up to the counter and stood there for a minute." Ms. Marchese stated that she "finally walked around [behind the counter] and asked him, 'Is that all.' He didn't say nothing [sic]." Ms. Marchese stated that he placed some "big alligator clips" on the counter to purchase. Ms. Marchese testified that the Defendant then "reached in his left pocket and pulled out a gun and placed it on the counter . . . . At that point he put his index [finger] over his lips and just pretty much told [her] to hush." Ms. Marchese stated that she was afraid for her life when the Defendant pointed the gun at her. Ms. Marchese stated that the Defendant was approximately "14 inches" from her and that the barrel of the gun was aimed at her stomach. Ms. Marchese stated that she had to scan the merchandise for the cash register to open. She stated that she placed the clips and the entire cash register drawer into a "regular [yellow] plastic [Dollar] General bag[.]" Ms. Marchese stated that the Defendant took the bag and left the store. Ms. Marchese stated that there was probably "about $300" in the cash register.

As the Defendant was leaving the store, Ms. Marchese's manager, Ms. Faith Mateos, realized that something unusual had occurred. Ms. Marchese motioned to her not to move and told her they had "just been robbed" and to "[c]all the cops." Ms. Marchese stated that Ms. Mateos noticed the Defendant leaving and "heard the change in the drawer hit the bottom of the bag."

Ms. Marchese stated that the Defendant "just walked like a normal person would across the parking lot . . . and got in a truck." Ms. Marchese stated that she identified the truck as "a Nissan Frontier, just a regular truck, wasn't a four-wheel drive, had an extended cab, regular wheel base, nothing fancy." Ms. Marchese stated that the "passenger side [window] was busted or had a plastic bag over it." Ms. Marchese stated that the truck was a "[p]urple, blue, metallic color." Ms. Marchese testified that she saw the Defendant's vehicle leaving the parking lot and turning "right on Mooresville Highway" in the direction of Interstate 65 and the "by-pass[.]" Ms. Marchese testified that she did not believe any other customers were in the store during the robbery.

Ms. Mateos also testified regarding the events of August 20 as follows:

> I heard the sound of jingling change which would have been one of the drawers that we carry, you know, you could hear it clinking. I turned around to find out what was going on and the gentleman was walking out my door with a Dollar General bag with my till down inside it, with my drawer. I looked at my cashier and she said, "I've been robbed." She mouthed it.

Ms. Mateos stated that she never saw the man's face, but she observed him leave the Dollar General store in a white t-shirt with "writing on the back[,]" "cargo shorts" with "lots of pockets[,]" and a baseball cap. Ms. Mateos saw the man leave the parking lot in a "[s]mall[,]" "bluish purple Nissan" truck. Ms. Mateos stated that the "passenger window [was] busted out and taped up or something

was wrong with it." Ms. Mateos stated that, when the robbery occurred, an "older lady and her granddaughter" were also in the store.

Officer James Johnson of the Lewisburg Police Department testified that he was the first police officer to arrive at the Dollar General store following the robbery. Officer Johnson stated that he interviewed Ms. Marchese and Ms. Mateos and then put a "BOLO" radio alert out to "be on the lookout for" an individual and truck matching the given description. Officer Johnson stated that Ms. Marchese was "very upset, very shaken about the incident" and "had a look of fear . . . on her face . . . ."

Mr. William Beard, an employee of the Williams Interstate Market on Mooresville Highway near Interstate 65, testified that he was at work on August 20, 2005. Mr. Beard stated that he assisted a customer with the gas pump who was driving a "purple blue Nissan" truck. Mr. Beard testified that the customer stated he was in a hurry and seemed anxious. Mr. Beard then had another customer inform him that there was someone in the parking lot "getting a ticket . . . ." Mr. Beard stated that he saw a "state trooper" "giving the gentleman commands or orders." Mr. Beard stated that he could not "recall whether [the officer] had his gun drawn" but that he "thought he had his hand on his gun for sure . . . ." The trooper then "had the gentleman walk away from the pump down to the end of the pump and he sat down on the ground. Then he cuffed him at some point there." Mr. Beard identified the customer as the Defendant.

Trooper Wayne Dunkleman of the Tennessee Highway Patrol testified that he heard the radio description of the suspect and soon came into contact with a vehicle fitting the description. Trooper Dunkleman stated that the truck was a "[p]erfect" match of the BOLO information. Trooper Dunkleman stated that he then "[m]ade contact with the gentleman at the gas pumps." Trooper Dunkleman stated that he had his pistol drawn and held to his side when he approached and arrested the suspect. Trooper Dunkleman stated that the suspect cooperated and was detained. Trooper Dunkleman stated that the suspect identified himself as the Defendant. Trooper Dunkleman requested the Defendant's consent to search his truck, which the Defendant refused. Trooper Dunkleman stated that he did a "plain view search" but that he "did not see anything."

Corporal Jackie Robertson of the Lewisburg Police Department testified that he met Trooper Dunkleman at the Williams Interstate Market where the Defendant was apprehended. Corporal Robertson testified that he approached the Defendant's truck, "opened the passenger door," and "located a pink-handled handgun" inside the vehicle. Corporal Robertson stated that he notified the detectives, who were en route, of the handgun and escorted the Defendant to the Lewisburg Police Department.

Corporal Scott Braden of the Lewisburg Police Department testified that he also met Trooper Dunkleman at the Williams Interstate Market after hearing over the radio that a suspect's vehicle had been found. Corporal Braden stated that he radioed Officer Johnson asking him "if the victim would be able to identify the individual." Corporal Braden stated that he went to the Dollar General store, picked up Ms. Marchese, and escorted her to the Williams Interstate Market. Corporal Braden stated

that, as they were nearing the gas station, Ms. Marchese stated, "That's the vehicle. That's the vehicle." Corporal Braden stated that, as they approached the Defendant, Ms. Marchese identified him as being the man who robbed the Dollar General store. Corporal Braden stated that Ms. Marchese told him that she was "110 percent positive" that the man apprehended was the man who robbed the store.

Joe Liggett, a local farmer whose property was located near the Dollar General store, testified that he was "bush hogging around the edge of the hay field" and "noticed a yellow bag . . . [and] what appeared to be a money tray that was turned upside down. Under that money tray also was a pack of . . . three or four clips. . . . It was a pack of those that were unopened." Mr. Liggett stated that the money tray "was found inside of the bag . . . ." Mr. Liggett stated that the "bag reminded [him] of the Dollar General Store robbery[,]" which he had heard about in the local community. Mr. Liggett stated that he reported the items he found on his property. Mr. Liggett stated that the location at which the items were found was accessible to Mooresville Highway by "a number of ways" that are all very near to the Williams Interstate Market and are only a "mile and a quarter or mile and a half" from the Dollar General store.

Detective Sergeant Dac Burrow of the Lewisburg Police Department testified that he responded to the Williams Interstate Market. Detective Burrow stated that he recovered a .25 caliber semi-automatic handgun from the Defendant's truck. Detective Burrow stated that the gun was loaded with "seven live rounds of .25 caliber bullets" in the magazine and that the clip was in the gun. Detective Burrow stated that he also located a Wendy's restaurant bag with $304.00 cash inside. Following Detective Burrow's testimony, the State rested its case-in-chief.

The Defendant then testified and initially conceded that he had a conviction for sexual abuse in the first degree in Alabama. The Defendant stated that, before the events of August 20, he knew the victim, Ms. Marchese. The Defendant stated that he "met her around the end of May or the first of June" at the "Utopia Club[,]" a "strip joint." The Defendant stated that his wife was also with him at the Utopia Club and that he, his wife, and Ms. Marchese decided to "leave the club and go over to our house and party." The Defendant further explained that he, his wife, and Ms. Marchese all smoked crack cocaine and that "all three" of them "engage[d] in sex." The Defendant stated that, approximately a week later, they all three "did the same thing" and that this occurred again "one more time after that." The Defendant stated that, following the third "encounter[,]" his wife "became angry" that he was "paying [Ms. Marchese] too much attention." The Defendant stated that he and his wife separated after this disagreement and that he continued a romantic relationship with Ms. Marchese.

The Defendant stated that he and Ms. Marchese discussed taking money from the Dollar General store around "August 7th [or] 8th . . . ." The Defendant stated that Ms. Marchese initiated these conversations and planned as follows:

> The plan was that she . . . was to give me a call right before closing or right at closing when she had to close up the register. I think she called it the cash in

receipt, where they collected all of the money from the sales, and she would call me and let me know when that was going to happen and I would walk in as a customer, look like I was purchasing some items and when I did, she would place a bag of money from the register in with my purchases, and I would walk out with it. She would report it as a robbery.

The Defendant stated that, during early August when he and Ms. Marchese were plotting to steal the money from the Dollar General store, he took his cousin's handgun without permission because he "was going to an area to buy crack [with Ms. Marchese in Kirkland, Tennessee] and . . . wanted the protection."

The Defendant stated that, on August 20, Ms. Marchese called him at approximately 7:00 p.m. and he went to the store to carry out the plan. The Defendant stated that he entered the store, got a package of clips to purchase, and then Ms. Marchese "placed them and the [cash register] drawer in a Dollar General bag." The Defendant stated that, as he was leaving the store area, he "was concerned because she handed me the drawer and put it in the sack, and that wasn't what we had agreed to do, so [he] decided to throw away the drawer."

The Defendant stated that when he was in the Dollar General Store, he left his gun "in the truck . . . ." The Defendant stated that he never displayed a gun in the store. The Defendant stated that he could not have had the weapon in the pocket of his shorts, as Ms. Marchese claimed, because the "front pockets are sewed together." The Defendant admitted that he would have been able to carry a gun "down the waist band" of the pants but denied that he did so.

Following the jury trial, the Defendant was convicted of aggravated robbery, a Class B felony. The Defendant was sentenced as a Range I, standard offender to serve twelve years in the Department of Correction. This appeal followed.


**Analysis**

**I. Sufficiency of the Evidence**

First, the Defendant argues that the evidence presented at trial was insufficient for a rational juror to find him guilty of aggravated robbery beyond a reasonable doubt. The Defendant claims that he and the robbery victim knew one another and conspired to stage the robbery. The Defendant asserts that he did not take the handgun into the Dollar General store, did not put the victim in fear, and did not accomplish the theft with violence. Therefore, the Defendant argues that a rational jury could only convict him of theft. The State insists that the victim's testimony, in which she denied knowing the Defendant or plotting this offense with him, provided sufficient evidence to convict the Defendant of aggravated robbery. We agree with the State.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support

the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

As indicted in this case, the offense of aggravated robbery requires the "intentional or knowing theft of property from the person of another by violence or putting the person in fear" and must be "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." See Tenn. Code Ann. §§ 39-13-401, -402(a).

In this case, the Defendant and the victim presented markedly different versions of events to the jury. The Defendant does not dispute the State's proof regarding his identification or his participation in the offense, but the Defendant states that he was not armed with a gun during the incident and that he and the victim plotted this scheme jointly. Factual disputes are resolved by the trier of fact. "That the jury chose to accredit the testimony of the prosecution witnesses and reject that of the defense witnesses is within their prerogative." State v. Summerall, 926 S.W.2d 272, 275 (Tenn. Crim. App. 1995).

As its verdict demonstrates, the jury clearly accredited the testimony of the victim, Ms. Marchese. Ms. Marchese testified that she did not know the Defendant before August 20, 2005. She stated that he entered the Dollar General store where she was employed, motioned to her to be quiet, displayed a gun, and told her to empty the contents of the cash register. Ms. Marchese said she feared for her life as the Defendant held the gun pointed at her. Ms. Marchese stated that she gave the contents of the drawer to the Defendant and that he left the store. The Defendant was ultimately apprehended with $304.00 cash and a handgun in his truck. In light of this evidence, a rational juror

-6-

could have found the Defendant guilty of aggravated robbery beyond a reasonable doubt. Therefore, we conclude that this issue has no merit.

## II. Sentencing

The Defendant's second issue is that his sentence of twelve years—the maximum within Range I—is excessive. The State responds that the trial court properly enhanced the Defendant's sentence based upon his "extremely lengthy history of criminal convictions or criminal behavior[,]" his past failures to comply with sentences involving release into the community, his lack of hesitation to commit the offense when the risk to human life was high, and the fact that he was on probation when he committed the instant offense. The State additionally notes that the trial court found no mitigating factors. We agree with the State that the trial court did not err in sentencing the Defendant to the maximum allowable within the range.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

The presentence report reflects that, at the time of sentencing, the Defendant was forty-three years old and separated from his wife. He has a high school education. The report states there is some confusion about whether the Defendant has children. He has been employed sporadically as a cook at restaurants and bars.

At the sentencing hearing, the trial court found as follows:

There is only one conviction, only one charge, aggravated robbery. It is a B felony. So he is looking at between 8 and 12 years. . . .

. . . [T]his is not a 100 percent sentence. . . . It is going to be a 30 percent sentence.

I find no mitigating factors apply. I do find enhancement factor number 1 applies. The [D]efendant has a previous history of criminal convictions and criminal behavior in addition to those necessary to establish the appropriate range.

Specifically he has 9 forgeries which are divided up at different times between different victims.

And he also has the 15 year sentence out of Alabama for sexual abuse in the first degree as well as a couple of misdemeanors.

Anyway, also he admitted to the drug usage which is criminal conduct which also applies.

I place enormous weight on that extremely lengthy history of criminal convictions or criminal behavior.

I also find that number 8 applies. That the [D]efendant before trial or sentencing has failed to comply with conditions of a sentence involving release in the community.

He was on probation for the public intoxication when these instant offenses were committed.

And was on probation in the forgery cases when the offense in Alabama occurred.

Also appears he was on bond for the sexual offender registry violation when these instant offenses were committed as well.

Number 9, I do agree that that was an element of the offense.

It is an element of the offense for his conviction that he used a firearm to commit the robbery. So the State could not use that to further enhance his sentence.

I am going to agree with the General's argument about number 10. It would be unusual to think of an instance where you committed an aggravated robbery with no hesitation about committing a crime when the risk to human life is high. I think it is theoretically possible. I will place slight weight on that and frankly think were I not to find that that applied, the other enhancing factors would be sufficient for the sentence I am going to impose anyway.

Number 13-C applies as we talked about that the [D]efendant was on probation for public intoxication at the time the instant offense was committed.

I find no mitigating factors.

I do agree with the General's argument. Aggravated robbery is extremely serious. The [D]efendant has a horrendous record. I impose a 12 year sentence as a Range I Standard Offender.

We conclude that the trial court was within its discretion to sentence the Defendant to the maximum within Range I based upon the enhancement factors and the lack of mitigating factors. With regard to Tennessee Code Annotated section 40-35-114(1), the Defendant has extensive criminal convictions including first degree sexual abuse and nine forgeries. The Defendant has also admittedly used illegal drugs, which also constitutes criminal behavior. The trial court was within its discretion to accord this enhancement factor "enormous weight."

With regard to Tennessee Code Annotated section 40-35-114(8), the trial court was within its discretion to enhance the Defendant's sentence based upon his failure to comply with sentences involving release into the community. The trial court stated on the record that the Defendant was on probation for public intoxication when the offense in this case occurred and that the Defendant was on probation from his sexual abuse offense when he committed the previous forgeries. Therefore, the trial court did not err in applying this factor.

With regard to Tennessee Code Annotated section 40-35-114(10), the trial court was within its discretion to enhance the Defendant's sentence based upon the fact that he had "no hesitation about committing a crime when the risk to human life was high . . . ." Tenn. Code Ann. § 40-35-114(10). Although a sentence may not normally be enhanced based upon a factor that is inherent in the offense, our supreme court has concluded that the trial court may nonetheless enhance a sentence based upon this factor when individuals other than the victim may have been harmed by the commission of the offense. State v. Imfield, 70 S.W.3d 698, 707 (Tenn. 2002).

We have considered a similar case involving the application of section 40-35-114(10) to an aggravated robbery of a store clerk. In State v. Paul Biles, No. M2002 00459-CCA-R3-CD, 2003

WL 21004724 (Tenn. Crim. App., Nashville, May 2, 2003), the Defendant entered a convenience store and robbed the cashier at gunpoint while other customers were in the store. Id. at *1-2. In Biles, we concluded that the trial court properly applied this enhancement factor based upon the pronouncement in Imfield that the risk of danger to other victims was not necessarily inherent in an aggravated robbery. Id. at *5. In the present case, Ms. Marchese's manager was in the store and was endangered by the Defendant. Furthermore, although Ms. Marchese did not believe other customers were in the store during the robbery, Ms. Mateos testified that "an older lady and her granddaughter" were in the store. As such, we conclude the Defendant caused risk to the lives of others in addition to Ms. Marchese, the named victim.

Finally, with regard to Tennessee Code Annotated section 40-35-114(13)(C), the trial court found that the Defendant had been on probation for public intoxication only five days at the time he committed the aggravated robbery. Therefore, the trial court properly enhanced his sentence based upon this factor.

We conclude that the Defendant has failed to meet his burden of demonstrating that the trial court erred in enhancing his sentence. Therefore, this issue has no merit.

### III. Lesser-Included Offense Instruction

The Defendant's final issue is whether the trial court erred in failing to instruct the jury on the lesser-included offense of attempted aggravated robbery. The Defendant bases this argument solely on the fact that attempted aggravated robbery is classified as a lesser-included offense of aggravated robbery. See State v. Burns, 6 S.W.3d 453, 456 (Tenn. 1999). The State responds that the issue is waived for failure to "support this issue with argument, citation to authorities, or appropriate references to the record" and also "because the [D]efendant has failed to show that he properly requested instructions for the lesser-included offense of attempt." The State also argues that the trial court is not required to instruct the jury on a lesser-included offense unless the "evidence introduced at trial is legally sufficient to support a conviction for the lesser-included offense." See Burns, 6 S.W.3d at 469. The State contends that the Defendant completed the robbery and that the trial court did not err by failing to charge the jury on attempted aggravated robbery.

The State contends that Tennessee Code Annotated section 40-18-110(b) requires that counsel provide a "written request . . . specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought . . . ." The statute further provides that if a written request for a specific lesser-included offense is not filed, the lesser included offense instruction is waived and may not be presented as an issue on appeal. Tenn. Code Ann. § 40-18-110(c). In this case, the record shows that no written request was filed for a jury instruction on attempted aggravated robbery. We conclude that the Defendant has waived the issue.

Waiver aside, our supreme court has held that appellate courts are not precluded from reviewing this issue under the plain error doctrine. See State v. Page, 184 S.W.3d 223, 230 (Tenn. 2006).

Under the Burns test, an offense is a lesser included offense if it meets the following requirements:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Burns, 6 S.W.3d at 466-67. Furthermore, our supreme court stated in Burns that a lesser-included offense instruction is not required unless the particular facts of the case would support a jury conviction on that charge. Id. at 469.

On appeal, "[t]he question whether a given offense should be submitted to the jury as a lesser-included offense is a mixed question of law and fact." State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001) (citing State v. Smiley, 38 S.W.3d 521, 524 (Tenn. 2001)). The standard of review on appeal is de novo. Burns, 6 S.W.3d at 461.

Upon review, we conclude that the trial judge did not err in its determination that an attempt instruction is necessary under Burns only "when there is a factual situation where it could go either/or as to whether it is a completed act or not." The trial court correctly found that the facts of this case did not support an instruction for attempt because the Defendant admitted to taking the money from the Dollar General store. As the trial court noted, the jury was "either . . . going to believe the State's case or believe [the Defendant]." Therefore, the issue was whether the Defendant was guilty of theft or of aggravated robbery. The facts adduced at trial, in any light that the jury may have chosen to view them, did not warrant an instruction for attempt. The trial court did not err by

-11-

declining to instruct the jury on attempted aggravated robbery. Because we conclude that the trial court did not err, a plain error analysis is unnecessary.

**Conclusion**

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____

DAVID H. WELLES, JUDGE